# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH PIERRE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1384** |
| **LEHIGH HANSON PIPE AND PRECAST, et al.** | **SECTION: "G"(5)** |

## ORDER & REASONS

Plaintiff Joseph Pierre ("Plaintiff") filed this action in state court against Hanson Pipe & Precast, LLC and Liberty Mutual Fire Insurance Company ("Defendants"). Defendants removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[1]

Upon review of this matter in preparation for the pretrial conference, it came to the Court's attention that the Court may not have subject matter jurisdiction over this matter. As the Fifth Circuit has explained, even if the plaintiff does not file a motion to remand, the Court must address the jurisdiction issue *sua sponte* since a "party may neither consent to nor waive federal subject matter jurisdiction."[2] "[S]ubject matter delineations must be policed by the courts on their own initiative."[3] The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[4]

On October 9, 2013, following the guidance provided by the Fifth Circuit in *Allen v. R&H Oil & Gas Co.*,[5] the Court ordered that the parties submit summary-judgment-type evidence

---

[1] Rec. Doc. 1.

[2] *Simon v . Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).

[3] *Gasch v. Hartford Acc. & Idem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

[4] 28 U.S.C. § 1447(c).

[5] *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) ("In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal.")

regarding the amount in controversy at the time of removal.[6] Defendants and Plaintiff filed memoranda regarding the amount in controversy on October 11, 2013.[7] For the reasons that follow, the Court finds that Defendants have not established by a preponderance of the evidence that the amount in controversy at the time of removal exceeded $75,000. Therefore, the Court remands this matter to state court.

## I. Background

On February 23, 2011, Plaintiff, a truck driver, was at Defendant Hanson Pipe & Precast's facility to pick up a delivery of large curved arch molds.[8] After loading his own truck, Plaintiff began to assist with loading another person's truck.[9]

To load the molds, Hanson Pipe employees would lift and guide each mold onto the truck with a crane.[10] While Plaintiff was standing on top of the mold, strapping it down, the mold came crashing down, followed by Plaintiff.[11] During the fall, Plaintiff caught his hand on the trailer cage and broke the metacarpophalangeal joint of his index finger.[12] Plaintiff subsequently underwent surgery.[13]

---

[6] Rec. Doc. 31.

[7] Rec. Doc. 33; Rec. Doc. 34.

[8] Rec. Doc. 28 at p. 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

## II. Parties' Arguments

### A. Defendants' Notice of Removal

In their  Notice of Removal,[14] Defendants acknowledge that it is not facially apparent that Plaintiff's claims exceed $75,000, saying "[b]ased on the broad, non-specific injury allegations contained in plaintiff's Petition, it was not clear that the plaintiff's damages could exceed the federal court's jurisdictional threshold."[15] However, Defendants aver that Plaintiff's "medical records indicate that [Plaintiff's] injuries support an amount in controversy exceeding $75,000."[16] According to Defendants, these records demonstrate that:

> Pierre suffered traumatic injury involving a dislocation to the right index finger and possibly a dislocation to the right ring finger. Two unsuccessful attempts at a closed reduction preceded an operation to reduce the dislocation. The records reflect that Pierre described 10/10 pain prior to surgery. Moreover, there was a delay in the surgery due to his lack of insurance, causing him additional pain and suffering. The operation was performed on April 24, 2011 at a state facility. . . . After his surgery Peirre [sic.] returned to Texas and continued to undergo treatment for his injuries at Progressive Medicine Associates LLC in Houston. Throughout this time, Pierre was not working and continued to complain of pain. He was later seen by Dr. Thomas Lyons, a Louisiana orthopedic surgeon on May 5, 2011. Dr. Lyons prescribed physical therapy and medication.[17]

Defendants state that "Pierre's medical bills, not including prescriptions, are approximately $16,500.00."[18]

### B. Defendants' Memorandum Regarding Amount in Controversy

In their memorandum regarding the amount in controversy, filed October 11, 2013,[19]

---

[14] Rec. Doc. 1.

[15] Rec. Doc. 1 at p. 3.

[16] *Id.*

[17] *Id.* at p. 4.

[18] *Id.*

[19] Rec. Doc. 33.

Defendants supplement their Notice of Removal. According to Defendants, Defendants' counsel reeived a portion of Plaintiff's medical records on April 30, 2012.[20] Defendants aver that "[r]eading these medical records in light of the allegations in the Petition, it became evident that Pierre's injuries support an amount in controversy exceeding $75,000."[21]

Defendants contend that "[w]hile plaintiff's Petition is unclear with respect to potential damages, there are several allegations that indicate the damages in this case are extensive"[22]:

> . . . As he [Plaintiff] was assisting in tying a load of metal forms to a truck, the defendant's employee(s) prematurely released to [sic.] load causing **serious injury** to the plaintiff.[23]

> . . . As a result of the occurrence sued upon, plaintiff, Joseph Pierre, sustained **severe, painful, and disabling physical and mental injuries**.[24]

> . . . The injuries caused [sic.] and aggravated by the described accident have cause plaintiff, Joseph Pierre, **prolonged pain and suffering, extending to the present day**, and will continue to cause petitioner **future pain, suffering, and medical expenses**.[25]

Defendants describe specific treatments that Plaintiff received, including surgery under general anesthesia, as a result of his injuries,[26] and submit records indicating that Plaintiff's medical bills at the time of removal totaled approximately $16,500.[27] Furthermore, Defendants point to one of Plaintiff's medical records dated May 4, 2011, which states: Plaintiff "was previously employed

---

[20] *Id.* at p. 3.

[21] *Id.*

[22] *Id.*

[23] *Id.* at p. 4 (citing Rec. Doc. 1-1 at ¶8) (emphasis in original).

[24] *Id.* (citing Rec. Doc. 1-1 at ¶8) (emphasis in original).

[25] *Id.* (citing Rec. Doc. 1-1 at ¶8) (emphasis in original).

[26] *Id.* at p. 5-7.

[27] *Id.* at p. 7.

as a truck driver; however has not returned to work since injury to the right hand."[28] Defendants aver

that even though they did not have any specific information regarding Plaintiff's actual wages, based

on the medical records as well as the average annual income for a person in the United States in

2011, they could estimate Plaintiff's lost income at $12,300.[29]

Finally, Defendants assert that Plaintiff may be able to receive general damages, and they

cite cases that "provide an estimate of potential damage awards for this type of injury without regard

to liability."[30] First, Defendants cite *Locke v. Young*, a Louisiana state appellate court decision that

"upheld an award of $150,000 in general damages resulting from a fractured finger that occurred

in a motorcycle accident."[31] Next, Defendants cite *Spears v. City of Scott*, in which an appellate

court raised the plaintiff's general damages from $50,000 to $75,000 where plaintiff broke her ring

finger in an automobile accident and required two surgeries.[32] Finally, Defendants cite *Benoit v.*

*Capital Manufacturing Co.*, in which the plaintiff was awarded $81,343 for a broken finger requiring

a bone graft and resulting in residual pain.[33]

### C. Plaintiff's Arguments That Amount In Controversy Did Not Exceed $75,000 at Time of Removal

In his October 11, 2013 motion to remand and incorporated memorandum of law,[34] Plaintiff

---

[28] Rec. Doc. 33-1 at p. 4.

[29] Rec. Doc. 33 at p. 7 (citing http://usatoday30.usatoday.com/money/economy/story/2012-02-09/income-rising/5303322/1). The Court notes that as of October 16, 2013, the cited web address does not lead to the appropriate article.

[30] Rec. Doc. 33 at p. 8.

[31] *Id.* (citing *Locke v. Young* 42,703 (La. App. 2 Cir. 12/12/07); 973 So.2d 831).

[32] *Id.* at p. 8-9 (citing *Spears et al v. City of Scott et al*, 05-230 (La. App. 3 Cir. 11/02/05); 915 So. 2d 838).

[33] *Id.* at p. 9 (citing *Benoit v. Capital Mfg. Co.*, 617 So.2d 477 (La. 1993)).

[34] Rec. Doc. 34.

avers that "Hanson Pipe did not have sufficient facts to establish jurisdiction at the time it removed this suit."[35] According to Plaintiff, at the time of removal, "[t]he records showed that Pierre had dislocated a finger joint and had consequently undergone a procedure, incurring approximately $15,700 in medical expenses."[36] Plaintiff further asserts that at the time of removal, Defendant did not have "proof of lost wages," "proof of disability," or "[proof of] possible future medical treatment."[37]

With respect to medical expenses, Plaintiff contends that Defendant's estimate of $16,500 is misplaced. According to Plaintiff, "[t]he $16,500 calculated by Hanson Pipe includes unrelated medical expenses from Medical Center of Louisiana-New Orleans on March 9, 2011 and lab tests from Progressive Medicine on April 8, 2011."[38]

Turning to lost wages, Plaintiff asserts that "Hanson Pipe first received proof of Pierre's lost wages in Pierre's discovery responses on July 18, 2012. . . . Before that time, Hanson had no information as to whether Pierre had a full time, part time, or a one time job."[39]

Finally, Plaintiff maintains that at the time of removal, Defendants "did not have sufficient proof that the general damages would likely reach the jurisdictional minimum."[40] Plaintiff contends that the case law cited by Defendants is distinguishable. According to Plaintiff, "[t]he injury in *Spears v. City of Scott* does not resemble this case at time of removal," as "[t]he plaintiff in that case

---

[35] *Id.* at p. 2.

[36] *Id.*

[37] *Id.*

[38] *Id.* at p. 2, n. 1.

[39] *Id.* at p. 3.

[40] *Id.*

sustained injuries to two fingers and a wrist that caused pain every day."[41] Plaintiff further asserts that *Locke v. Young* is also distinguishable "because that plaintiff's physicians had speculated that he would require a future fusion, whereas Hanson Pipe had no indication at the time of removal that Pierre would possibly require future surgery."[42]

## II. Law and Analysis

### A. Removal

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.[43] The removing party bears the burden of demonstrating that federal jurisdiction exists.[44] In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[45] If any doubt remains as to jurisdiction, the Court should construe ambiguities against removal and remand the case.[46]

### B. Amount in Controversy

Under Fifth Circuit law, a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's

---

[41] *Id.*

[42] *Id.*

[43] *See* 28 U.S.C. § 1441(a).

[44] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[45] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[46] *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 868, 872 ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."; *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979) ("[I]t is axiomatic that ambiguities are generally construed against removal. . . .").

complaint alleges a specific amount of monetary damages.[47] When the plaintiff alleges a damage figure in excess of the required amount in controversy, "that amount controls if made in good faith."[48] If the plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal.[49] "Thus, in the typical diversity case, the plaintiff remains the master of his complaint."

Nevertheless, Louisiana law ordinarily does not allow a plaintiff to plead a specific amount of damages.[50] A plaintiff is, however, permitted to make "a general allegation that the claim exceeds or is less than" a particular amount if making such an allegation is necessary to establish the lack of jurisdiction of federal courts due to insufficiency of damages.[51] When, as here, the plaintiff has alleged an indeterminate amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.[52] A defendant satisfies this burden either "(1) by demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."[53] The defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual

---

[47] *See Allen*, 63 F.3d at 1335.

[48] *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

[49] *Id.*

[50] *See* La. Code Civ. P. art. 893.

[51] *Id.*

[52] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000); *see also Simon*, 193 F.3d at 850; *Allen*, 63 F.3d at 1335.

[53] *Simon*, 193 F.3d at 850 (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999)); *see also Allen*, 63 F.3d at 1335.

amount in controversy exceeds $75,000.[54] Finally, the jurisdictional facts that support removal "must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time."[55]

### C. Analysis

In their Notice of Removal, Defendants acknowledge that it is not facially apparent that Plaintiff's claims exceed $75,000, saying "[b]ased on the broad, non-specific injury allegations contained in plaintiff's Petition, it was not clear that the plaintiff's damages could exceed the federal court's jurisdictional threshold."[56] Thus, the burden falls on Defendants to set forth specific facts that prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.[57] In this case, Defendants have pointed to three categories of damages: medical expenses, lost wages, and general damages. The Court addresses these categories in turn.

#### 1. Medical expenses

With respect to medical expenses, Defendants claim that "Pierre's medical bills at the time of the removal were approximately $16,500.00."[58] However, there are discrepancies that the Court must address.

First, Defendants contend that Plaintiff's medical records indicate the following expenses: (1) $1,247.94 from Touro Hospital,[59]  (2) $12,928.76 from Medical Center of Louisiana, New

---

[54] *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[55] *Allen*, F.3d at 1335.

[56] Rec. Doc. 1 at p. 3.

[57] The Notice of Removal (Rec. Doc. 1.) recognizes that this is the proper standard.

[58] Rec. Doc. 33. at p. 7.

[59] *Id.* at p. 5.

Orleans,[60] (3) $184.00 from Progressive Medicine Associates,[61] (4) and $1,800 from Dr. Thomas Lyons, an orthopedic surgeon.[62] The Court notes that the sub-totals for these four categories of medical expenses add to $16,160.70, not $16,500 as Defendants claim.

Second, upon review of the medical records, the Court has found that the bills from Dr. Lyons total $1,924,[63] not $1,800. Increasing the medical expenses by $124 brings the total to $16,284.70.

Finally, Plaintiff avers that as of the time of removal, he had incurred $15,710.69 in medical expenses and that the $16,500 calculated by Defendant improperly includes unrelated expenses from the Medical Center of Louisiana, New Orleans on March 9, 2011, and lab testing from Progressive Medicine on April 8, 2011.[64] Defendant has not countered Plaintiff's assertion. In its review of the records, the Court has found three charges totaling $293.00 from the Medical Center of Louisiana, New Orleans on March 9, 2011. Charge one is $12.00 for "finger stick"; charge two is $214.00 for "appl splint"; charge three is $67.00 for "clinic—new.[65]" The Court has also found one charge for $50.00 described as "CMP and a HbA 1C laboratory testing" from Progressive Medicine Associates on April 8, 2011;[66] lab results from that day indicate that Plaintiff had a Comprehensive Metabolic Panel, including a Hemoglobin A1c test.[67] Subtracting these charges from the $16,284.70 calculated

---

[60] *Id.* at p. 6.

[61] *Id.*

[62] *Id.* at p. 7.

[63] *See* Rec. Doc. 33-1 at pp.6-8.

[64] Rec. Doc. 34 at p. 2, n. 1.

[65] Rec. Doc. 33-1 at p. 38.

[66] Rec. Doc. 33-2 at p. 23.

[67] Id. at p. 29.

by the Court would yield a total of $15,941.70.

   *2. Lost Wages*

   As for lost wages, Defendants have not presented any evidence to support a particular hourly wage for Plaintiff or a particular work schedule. In cases where lost wages were included in the amount in controversy calculations, courts have had wage information specifically related to actual plaintiffs in each case. For example, in *Richey v. Wal-Mart Stores, Inc.*, the Fifth Circuit held that where "evidence in the record shows that [plaintiff's] hourly wage was $12.54," plaintiff could "reasonably expect to earn $26,083.20 annually."[68] Similarly, in *Shaw v. Wal-Mart, Louisiana, LLC*, another section of this Court included lost wages in its calculation of the amount in controversy because:

> The defendant provides a sworn affidavit that the plaintiff earned $60,000 per year at the time he was fired one year ago. The defendant reasonably posits that if a trial is decided in plaintiff's favor within six months of this Order (or, put another way, just over eighteen months after plaintiff's termination), back pay might total $90,000.[69]

   In the instant case, Defendants admit that they "did not have any wage information from Mr. Pierre at the time of removal."[70] Nonetheless, Defendants contend they had "sufficient information" to support lost wages of $12,300.[71] To arrive at that figure, Defendants cite *USA Today* for the proposition that the annual salary in the United States in 2011 was $50,000.[72] Based on the fact that the accident took place on February 23, 2011 and that a May 4, 2011 medical report indicated that

---

[68] *Richey v. Wal-Mart Stores, Inc.*, 390 F'Appx 375, 379 (5th Cir. 2010).

[69] *Shaw v. Wal-Mart Louisiana, LLC*, No. 11-539, 2011 WL 1831776 at *2 (E.D. La. May, 12, 2011) (Feldman, J.).

[70] Rec. Doc. 33 at p. 7.

[71] *Id.*

[72] Rec. Doc. 33 at p. 7 (citing http://usatoday30.usatoday.com/money/economy/story/2012-02-09/income-rising/5303322/1).

11

Plaintiff had not returned to work since the accident, Defendants deduce that Plaintiff had missed three months of work and had lost wages of $4,100 per month,[73] for a total of $12,300.

These calculations are too speculative to show by a preponderance of the evidence that Plaintiff had $12,300 in lost wages. First, Defendants base their calculations on national salary data, and they do not allege facts regarding this Plaintiff's specific wages. Furthermore, Defendants estimate that Plaintiff missed three months of work; however, the Court notes that time between February 23, 2011 and May 4, 2011 is only seventy days, not three months. Overall, this methodology does not support that Defendants could estimate Plaintiff's lost wages to be $12,300 at the time of removal.

### 3. General Damages

With respect to general damages, the case law does not merit a finding that general damages at the time of removal were sufficient to reach the jurisdictional threshold. Looking first at *Locke v. Young*, in that case Plaintiff sustained numerous injuries in connection with a motorcycle accident.[74] The trial court awarded him $1,950,000 for general damages, including $150,000 for injuries to his hand.[75] On appeal, a Louisiana appellate court held that the trial court had not abused its discretion in awarding $150,000 for the hand injuries.[76] The plaintiff had fractured his fifth metacarpal and had to have the finger repaired with pins. Three out of four experts testifying in the case concluded that the plaintiff would have to undergo fusion surgery within five to ten years of

---

[73] $50,000 divided by 12 equals $4,166.67.

[74] *Locke*, 973 So.2d at 835.

[75] *Id.* at 840.

[76] *Id.* at 845.

the accident.[77] Furthermore, experts testified that the plaintiff had developed significant arthritis, requiring him to be on Celebrex for the rest of his life.[78] Unlike the plaintiff in *Locke*, there was no evidence at the time of removal that Plaintiff in the pending case had pins put into his finger, would require a second surgery, or had developed arthritis requiring a lifetime of medication.

The second case cited by Defendants is *Benoit v. Capitol Manufacturing Co.*, a decision by the Louisiana Supreme Court.[79] In *Benoit*, the plaintiff's fifth metacarpal joint was fractured after a co-worker hit him with a stick.[80] Plaintiff had to undergo two surgeries.[81] During the first, doctors inserted a bone graft from the plaintiff's wrist.[82] After that graft dissolved, doctors performed a second surgery "with a piece of bone from the pelvic area, a more painful site for a graft harvest."[83] As a result of the injury, the plaintiff had "approximately 30 percent less function in his right hand."[84] *Total* damages, including medical, lost wages, and general damages, were $81,348, and the Louisiana Supreme Court upheld this amount on appeal.[85] Like *Locke*, *Benoit* is distinguishable from the pending case. The plaintiff in *Benoit* had two surgeries, unlike Plaintiff here who underwent one. Furthermore, the surgeries in *Benoit* both involved a graft harvest, a particularly painful procedure. The Court does note, however, that *Benoit* was decided in 1993, and therefore,

---

[77] *Id.* at 844-845.

[78] *Id.*

[79] *Benoit*, 617 So.2d at 477.

[80] *Id.* at 478.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* at 478, 480.

13

a similar award in 2013 may be higher due to inflation.

The final case cited by Defendants is *Spears v. City of Scott*, in which a Louisiana appellate court increased the trial court's award of general damages from $50,000 to $75,000.[86] There, the plaintiff suffered a fractured joint in her middle finger following an automobile accident.[87] After undergoing two surgeries, she still experienced "significantly reduced" movement in her finger as well as daily pain in her right ring finger, little finger, and wrist.[88] *Spears* is distinguishable in that the plaintiff's injuries were severe enough to warrant two, rather than one, surgery.

A noteworthy case not cited by the parties is *Hughes v. Bossier Parish School Board*, which arose when a college student had a heavy item fall on her left hand, rip off her thumbnail, and nearly detach the tip of her thumb.[89] An orthopedic surgeon operated on the day of the accident to reattach the tip of the thumb and the nail.[90] He operated again about a year later to remove bone fragments and scar tissue.[91] He treated the plaintiff for roughly two years and ultimately assigned a 28% disability of the thumb.[92] The plaintiff took pain medicine daily for a year; it diminished but did not completely relieve her pain.[93] She missed three weeks of school, lost a part-time job, and continued to complain of occasional pain even four years after the accident.[94] The plaintiff had a diminished

---

[86] *Spears*, 915 So.2d at 999.

[87] *Spears et al v. City of Scott et al*, 05-230 (La. App. 3 Cir. 11/02/05); 915 So. 2d 838, 994.

[88] *Id.* at 996-97.

[89] *Hughes v. Bossier Parish School Bd.*, 32,225 (La. App. 2 Cir. 10/29/99); 745 So.2d 816, 817.

[90] *Id.* at 819.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

ability to perform several everyday tasks, and her 15-year history of playing the violin was impacted.[95] The jury awarded $50,000 in general damages.[96] The appellate court found that the award was "at the upper end when contrasted with those for somewhat similar injuries" but the impairment of an artistic pursuit and other factors prevented the award from being considered "abusively" high.[97] Two members of the five-judge panel dissented on the grounds that $35,000 was the maximum reasonable award.[98]

### 4. Total Amount in Controversy

Considering all of the evidence of the amount in controversy at the time of removal, Defendants have not met their burden of showing by a preponderance of the evidence that the amount in controversy exceeded $75,000. Based on the parties' arguments and the medical records, the Court finds that at the time of removal, Plaintiff's medical expenses were $15,941.70. Defendants' proposed estimate of lost wages, based on nationwide annual salary data published in *USA Today*, is speculative and non-specific to Plaintiff. Therefore, the Court finds that the evidence at the time of removal does not support including lost wages in the amount in controversy.

If medical expenses were $15,941.70, then general damages would have to be over $59,058.30. The cases cited by Defendants do not support such a proposition. *Locke*, *Benoit*, and *Spears* all appear to involve injuries more serious than Plaintiff's alleged injury. The plaintiffs in *Benoit* and *Spears* had two surgeries, and three out of four experts testified that the plaintiff in *Locke* would need to undergo two surgeries. Here, Plaintiff underwent one surgery, and there was no

---

[95] *Id.*

[96] *Id.* at 818.

[97] *Id.* at 819-20.

[98] *Id.* at 820.

15

evidence at the time of removal that a second surgery would be required. The Court also notes that in *Hughes v. Bossier Parish School Board*, another case in which the plaintiff had two surgeries, a Louisiana court upheld a general damage amount of only $50,000, and two judges would have limited recovery to $35,000. Therefore, the Court finds that Defendants have not shown by a preponderance of the evidence that general damages are sufficient to meet the jurisdictional threshold.

When this Court considers all of the categories of damages, the total amount of damages could well exceed $75,000; however, "[a] 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely or not' standard," and it cannot be used to determine whether the amount-in-controversy requirement has been met.[99] Medical expenses were only $15,941.70. Defendants had no information for lost wages related to Plaintiff specifically. General damages were too speculative for this Court to find by a preponderance of the evidence that they exceeded $59,058.30. While there may have been a "possibility" that Plaintiff could have recovered more than $75,000, the preponderance of the evidence standard was not met.

### III. Conclusion

Defendants have not met their burden of showing by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal. Accordingly,

**IT IS HEREBY ORDERED** that the above-captioned matter is remanded to state court.

**NEW ORLEANS, LOUISIANA**, this <u>18th</u> day of October, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[99] *Allen*, 63 F.3d at 1336.